***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Chrystal R. Stanback and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of the Deputy Commissioner and AFFIRMS with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Commission and the Commission has jurisdiction over the parties and the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. Both plaintiff and defendant are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
4. At all times relevant to this matter, an employer-employee relationship existed between plaintiff and defendant, and defendant was insured for workers' compensation benefits.
5. The date of the injury which is the subject of this claim is March 13, 2006.
6. Plaintiff's average weekly for the purposes of this action is $489.71, yielding a compensation rate of $326.49.
7. Defendant paid plaintiff temporary total disability benefits between March 14, 2006 through May 25, 2007, except for periods where plaintiff returned to work at modified duty, during which periods she was paid temporary partial disability benefits.
8. Defendant terminated plaintiff's temporary total disability benefits effective May 26, 2007, for a six-week period per agreement of the parties, but did not reinstate plaintiff's benefits at the end of this period.
9. Exhibits entered into evidence include the following:
 a. Stipulated Exhibit #1 — Pre-Trial Agreement
 b. Stipulated Exhibit #2 — Medical Records
 c. Stipulated Exhibit #3 — Consent Opinion and Award filed June 28, 2007, by Deputy Commissioner Ronnie Rowell
 d. Plaintiff's Exhibit #1 — Plaintiff's response to letter from defendant regarding her termination
 e. Defendant's Exhibit #1 — June 4, 2004 medical record
 f. Defendant's Exhibit #2 — Letter to plaintiff advising her to return to work
10. Issues for determination include the following:
 a. Whether defendant unlawfully or improperly terminated plaintiff's temporary total disability benefits following her six week maternity leave in contravention of the law and/or the parties' agreement;
 b. Whether defendant should reinstate plaintiff's temporary total disability benefits beginning July 7, 2007;
 c. Whether defendant should be sanctioned for unlawful termination plaintiff's temporary total disability benefits;
 d. Whether defendant should authorize and pay for medical treatment by Dr. Jerry Barron;
 e. Whether plaintiff has unjustifiably refused suitable employment by only returning to work for approximately four hours on July 23, 2007.
 *********** EVIDENTIARY RULING
In defendant's Brief, defendant requested that the Full Commission accept into evidence a June 15, 2007 letter showing that defendant did not learn of the May 25, 2007 birth of plaintiff's child until June 15, 2007. Defendant's request is hereby DENIED.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was employed as an Emergency Medical Technician for Mecklenburg EMS Agency in Charlotte, North Carolina.
2. On March 13, 2006, plaintiff sustained a compensable injury by accident to her left knee.
3. On March 14, 2006, plaintiff was evaluated by David M. Peterson, M.D., with OccMed at the referral of her employer. After no improvement in her knee symptoms, plaintiff was referred for an MRI. Plaintiff was found to have a small medial meniscus tear. Dr. Peterson then referred plaintiff to Dr. Majors for evaluation.
4. Defendant accepted liability for plaintiff's claim pursuant to a March 28, 2006 Form 60 and paid plaintiff compensation at the rate of $326.49 per week beginning March 14, 2006, except during brief periods when she returned to work at modified duties for defendant.
5. On April 7, 2006, plaintiff underwent orthopedic evaluation with Roy Majors, M.D. Dr. Majors noted that plaintiff was experiencing left knee pain that resulted from a direct blow and twisting injury at work while unloading a patient stretcher. He diagnosed plaintiff with underlying patellofemoral arthrosis and possibly an early meniscal tear. Dr. Majors referred plaintiff for aggressive physical therapy.
6. On April 17, 2006, plaintiff began physical therapy at HealthSouth three times per week. She was unable to tolerate greater than fifteen minutes of sitting, walking, or standing without rest due to knee stiffness and pain.
7. On May 1, 2006, Dr. Majors documented no improvement in plaintiff's condition. He diagnosed her with symptomatic medial meniscal tear in the left knee and chondromalacia patella with lateral subluxation of the patella. He recommended that plaintiff undergo arthroscopic meniscectomy, microfracture, and probable lateral release.
8. On May 16, 2006, plaintiff underwent arthroscopic lateral release of her left knee performed by Dr. Majors.
9. On May 17, 2006, Dr. Majors noted no evidence of meniscal tear, but did observe plaintiff to have marked lateral tracking of the patella. Plaintiff was started on aggressive physical therapy. On May 19, 2006, plaintiff began rehabilitative therapy, three times per week at HealthSouth.
10. On June 5, 2006, Dr. Majors noted that plaintiff was doing "a lot better." He instructed her to continue aggressive therapy and released her to "modified sedentary work" beginning June 6, 2006.
11. On June 13, 2006, the physical therapist at HealthSouth documented that plaintiff was having increased symptoms over the past week due to a "popping" feeling in her lateral knee. Plaintiff was unable to tolerate walking or sitting for greater than ten minutes.
12. On June 19, 2006, the physical therapist documented that plaintiff had continued tenderness in her knee and occasional bouts of buckling.
13. On June 23, 2006, plaintiff had difficulty with weight bearing and knee flexion. Plaintiff was experiencing increased swelling around the knee joint as the day progressed and it was recommended that plaintiff return to Dr. Majors for recheck due to pain.
14. On June 23, 2006, plaintiff returned to Dr. Majors. Dr. Majors' examination of the left knee revealed diffuse tenderness, trace effusion, decreased quad tone and mass, and some limited range of motion. Dr. Majors stated that plaintiff would have some ongoing chronic pain that she will need to push through. He increased her therapy to four times per week.
15. On July 14, 2006, plaintiff's impairments were preventing her from having the ability to perform her job duties. On July 21, 2006, plaintiff's knee had given out the day before, causing her to fall.
16. On July 27, 2006, plaintiff had completed 33 physical therapy visits with fair overall progress, but she continued to be limited by pain and "catching" sensations in the her left knee.
17. On July 28, 2006, plaintiff informed Dr. Majors that she felt some improvement in her strength and endurance, but continued to experience sharp pain in her left knee. Dr. Majors referred her for work conditioning.
18. On August 2, 2006, plaintiff underwent an orthopedic evaluation with Jerry Barron, M.D., after Dr. Majors' physical therapist provided plaintiff with Dr. Barron's name for a second opinion. Dr. Barron's examination was notable for positive patellofemoral crepitus with range of motion and grind and compression pain, and decreased quad tone. Dr. Barron felt plaintiff probably should not do the work hardening, but should undergo regular physical therapy instead.
19. On August 7, 2006, the physical therapist at HealthSouth, Julie Vasicek, discharged plaintiff from work hardening stating that "she is not benefiting as much from work conditioning as she did with the regular program . . .," and returned her back to the regular skilled therapy program. Ms. Vasicek noted that plaintiff had overall increased physical conditioning, but continued to have difficulty tolerating knee pain. She was also unable to return from a full squat position and had difficulty tolerating lifting and walking.
20. On August 15, 2006, physical therapist Vasicek noted that plaintiff was" . . . showing excellent effort in PT clinic."
21. On August 31, 2006, plaintiff had some improvement with sitting and sleeping tolerance, but still had pain with steps and squatting, and the therapist stated, "Patient continues to be functionally limited by pain."
22. On September 1, 2006, Dr. Majors noted plaintiff to continue to have ongoing pain and weakness. Her examination was positive for decreased quad tone and mass with cogwheel and breakaway weakness. Dr. Majors attributed plaintiff's "work difficulties" to her obesity. Dr. Majors released plaintiff to return to work with no restrictions. Dr. Majors opined that neither plaintiff's work related knee injury, nor the surgery prevented her from returning to work as an EMT. He assigned a five percent (5%) permanent partial disability rating to her left knee. Plaintiff asked Dr. Majors about his view of a second opinion from Jerry Barron, M.D., and Dr. Majors stated that he felt such an opinion was appropriate and recommended she obtain the same. Dr. Majors later amended his office note to state that plaintiff requested a second opinion with Dr. McHale, a doctor whom plaintiff did not know.
23. Plaintiff had worked as an emergency medical technician for Mecklenburg EMS for two years prior to her injury. Plaintiff was overweight the entire time that she worked for Mecklenburg EMS and it did not interfere with her ability to perform her job. In fact, plaintiff had been overweight for most of her life. Plaintiff had never experienced any problems with her knee prior to her injury and had no difficulty in performing her job as an EMT.
24. Dr. Majors stated that he did not feel that plaintiff's weight had any bearing on her ability to return to work, only on her complaints of pain in her knee. In Dr. Majors' view, it did not matter whether plaintiff's weight remained stable pre-injury versus post-injury, it only mattered that she was overweight and had knee pain.
25. Dr. Barron stated that a person's weight could affect their knee, that it will not cause patella pain or cause the patella to track laterally, but that it could perhaps aggravate the condition.
26. Mr. Allen Barry Mannus, Risk and Safety Specialist for Mecklenburg EMS Agency, testified that plaintiff's job as she performed it would be classified as heavy to very heavy work that involved standing and walking, lifting over 100 pounds at times, carrying, stooping, bending, twisting, kneeling, and unusual positioning, and the same is found as fact.
27. On September 1, 2006, immediately following her appointment with Dr. Majors, plaintiff underwent a physical evaluation required by her employer prior to her returning to work. She had difficulty with the portions of the test that involved weight bearing on her left lower extremity and, accordingly, failed that part of the physical test.
28. On September 11, 2006, plaintiff was discharged from HealthSouth after 41 skilled therapy sessions. Plaintiff had progressed with range of motion and strengthening, but continued to have symptoms of pain with knee bending, walking, and prolonged sitting and standing.
29. On September 14, 2006, plaintiff was directed by her employer for a second opinion with Patricia McHale, M.D., a colleague of Dr. Majors, also at OrthoCarolina. Dr. McHale's examination of plaintiff's left knee revealed effusion, medial joint line tenderness, and infrapatellar tendon tenderness. There was crepitus and pain with motion and plaintiff's McMurray test was positive. Dr. McHale noted that per her therapy record, plaintiff had given good effort throughout therapy. Dr. McHale recommended that plaintiff undergo MRI testing.
30. On October 19, 2006, Dr. McHale noted that plaintiff had recently learned that she was pregnant and thus could not undergo the MRI until after her pregnancy. Her left knee examination findings were unchanged from the previous visit. Because Dr. McHale could not fully evaluate plaintiff until the MRI was performed, Dr. McHale deferred any further evaluation until the completion of Plaintiff's pregnancy. Dr. McHale declined to modify the work restrictions previously set by her colleague, Dr. Majors.
31. On November 14, 2006, defendant filed a Form 24 Application to terminate plaintiff's benefits. On January 4, 2007, a telephonic hearing was held before Special Deputy Commissioner Elizabeth M. "Lacy" Maddox. On January 11, 2007, Special Deputy Commissioner Maddox entered an Administrative Decision and Order disapproving the Form 24 Application. On January 23, 2007, defendant filed a Form 33 appealing Special Deputy Commissioner Maddox's decision.
32. On May 9, 2007, this matter was heard before Deputy Commissioner Ronnie E. Rowell after the parties had reached a consent agreement. The parties went on the record to memorialize the terms of their agreement.
33. On June 28, 2007, Deputy Commissioner Rowell entered an Opinion and Award finding, inter alia, that: "a. Defendants will continue to pay TTD through the day before plaintiff's delivery of her baby. Defendant's [sic] will suspend temporary total disability benefits to plaintiff for a period of six weeks beginning on the date of delivery of plaintiff's baby. b. Defendants will provide an MRI and follow up visit with Dr. McHale. It is the intention of the parties that the MRI and follow up visit with Dr. McHale will occur within six weeks of the baby's delivery. 3. Defendant will resume temporary total disability benefits after six weeks of the baby's delivery if plaintiff is not back at full time work at her pre-injury wages by that time." Deputy Commissioner Rowell further ordered that "[e]ither party may renew any motion/request for hearing after six weeks following the baby's birth."
34. On May 25, 2007, plaintiff delivered her baby. Following the birth of her baby, plaintiff continued to experience the same symptoms with regard to her compensable injury that she had experienced in September 2006. Six weeks from the time of her delivery was July 6, 2007. Pursuant to the Order of Deputy Commissioner Ronnie Rowell, temporary total disability benefits should have been reinstated as of this date since plaintiff was not at full time work at her pre-injury wages. Defendant did not reinstate temporary total disability compensation, in contravention of Deputy Commissioner Rowell's Order.
35. On June 19, 2007, plaintiff returned to Dr. McHale for evaluation. Plaintiff had effusion of the left knee and tenderness at the medial joint line and infrapatellar tendon. Crepitus was noted on motion and the McMurray test was positive. These findings were nearly identical to plaintiff's previous exams. Dr. McHale referred Plaintiff for an MRI. On July 2, 2007, plaintiff underwent an MRI of her left knee.
36. On July 10, 2007, plaintiff returned to Dr. McHale for further evaluation. Her exam of plaintiff was remarkable for tenderness over the lateral femoral facet and medial joint line and for tightness of the lateral retinaculum. Dr. McHale reviewed the MRI performed on July 2, 2007, noting that it showed degenerative changes in the medial meniscus and thinning of the cartilage in the patellofemoral joint. She attributed plaintiff's pain to arthritis of the patellofemoral joint and performed a cortisone injection. Dr. McHale released plaintiff to work without restrictions.
37. According to her deposition testimony, Dr. McHale released plaintiff to return to work strictly on the basis of the structural issues in her knee without taking into consideration the pain that plaintiff was experiencing.
38. On July 18, 2007, plaintiff returned to Dr. Barron for examination. Dr. Barron's examination was positive for significant quadriceps weakness, patellofemoral pain and crepitus, and a tendency for the patella to track laterally. Dr. Barron recommended physical therapy for six to eight weeks. With regard to plaintiff's return to work, Dr. Barron stated "[i]n my opinion Shannon is not able to return to work as a Medic at this time . . . There is a chance that she will never be able to return to work as an EMT." The Full Commission assigns greater weight to Dr. Barron's opinion as to plaintiff's ability to return to work as an EMT.
39. According to Dr. Barron's testimony, the lateral release procedure that plaintiff underwent was a much more invasive procedure than a simple scope. It would not be unreasonable for plaintiff to continue to experience pain after this type of surgery, as well as "give-way" type phenomena of the knee.
40. On July 23, 2007, plaintiff reported to work at 8 a.m. to begin her continuing education. For approximately three to three and a half hours, she sat in a classroom and listened to a guest speaker. During this period, she was seated and did not have to perform any of the normal, heavier job duties of an EMT.
41. When the morning training class was over, plaintiff was directed to attend a CPR refresher course. Plaintiff knew that this course would require her to bend or stoop and to get down on her knees. Plaintiff knew that she would not be able to perform those duties based on the condition of her knee. At that point, plaintiff presented her employer with a note from Dr. Barron restricting her from EMT work; however, defendant refused to accept the restrictions set by Dr. Barron.
42. On July 23, 2007, defendant filed a Form 28 Return to Work Report terminating plaintiff's weekly temporary total disability benefits.
43. Dr. Barron testified, and the Full Commission finds, that Plaintiff's pain and her functionality are factors that prevent plaintiff from returning to a job that includes bending, squatting, and stooping.
44. Plaintiff had not undergone a functional capacity evaluation to assess the functional limitations in her knee prior to returning to work.
45. Plaintiff did not undergo a physical evaluation by her employer in July 2007 to determine whether she could perform the functions required of her job.
46. When plaintiff attempted to return to work on July 23, 2007, her medical symptoms and examination findings were nearly identical to those she was experiencing when she failed her employer's physical examination in September 2006. Plaintiff was and is unable to perform the duties of an Emergency Medical Technician.
47. The employment proffered by defendant did not constitute suitable employment.
48. Defendants appealed the Deputy Commissioner's Opinion and Award, and the Full Commission affirms said decision.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. As a result of her admittedly compensable injury by accident of March 13, 2006, plaintiff remains temporarily totally disabled from her employment as an Emergency Medical Technician. N.C. Gen. Stat. § 97-29.
2. Plaintiff is entitled to payment of continuing temporary total disability benefits at the rate of $326.49 per week from June 14, 2007 and continuing until further Order of the Industrial Commission. N.C. Gen. Stat. § 97-29.
3. Defendant improperly failed to reinstate plaintiff's temporary total disability benefits and shall be sanctioned in accordance with N.C. Gen. Stat. § 97-18(g).
4. Plaintiff has sought treatment by an orthopedic knee specialist, Jerry L. Barron, M.D., who made further treatment recommendations intended to effect a cure, provide relief, and/or lessen the period of plaintiff's disability. Dr. Barron is designated as plaintiff's authorized treating physician in this case.
5. In the discretion of the Full Commission, counsel for plaintiff is entitled to have defendant pay the cost of the appeal, including a reasonable attorney's fee, in addition to the amount awarded as a percentage of plaintiff's compensation. N.C. Gen. Stat. § 97-88.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff temporary total disability compensation at the rate of $326.49 per week for the period beginning June 14, 2007 through the date of this Order. This compensation has accrued and shall be paid in a lump sum.
2. Defendants shall pay to plaintiff ongoing temporary total disability compensation at the rate of $326.49 per week, from the date of this Order, and said payments shall continue until further Order of the Commission.
3. Defendants shall authorize treatment with Jerry L. Barron, M.D.
4. Such compensation as is presently owed and due to Plaintiff under Paragraph 1 of this Award is subject to a ten percent (10%) penalty imposed pursuant to N.C. Gen. Stat. § 97-18(g). Defendants shall pay the penalty amount to Plaintiff in a lump sum.
5. A reasonable attorney fee of twenty-five percent (25%) of the compensation due Plaintiff under Paragraphs 1, 2, and 4 of this Award is approved for Plaintiff's counsel and shall be paid as follows: twenty-five percent (25%) of the lump sum due Plaintiff under Paragraphs 1 and 4 of this Award shall be paid directly to Plaintiff's counsel by Defendants. Plaintiff's counsel shall thereafter receive every fourth check of ongoing compensation.
6. Plaintiff's counsel is hereby awarded attorney's fees associated with this appeal to the Full Commission, pursuant to N.C. Gen. Stat. §97-88. As such, plaintiff's counsel shall submit to the Full Commission an Affidavit setting forth the time spent preparing for, attending, and arguing this appeal to the Full Commission. Upon review of this Affidavit, the Full Commission shall issue an Order awarding the specific amount of attorney's fees to which plaintiff's counsel is entitled.
7. Defendants shall pay the costs.
This the ___ day of February, 2009.
S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/_____________ PAMELA T. YOUNG CHAIR
 S/_______________ BERNADINE S. BALLANCE COMMISSIONER